ALLEGHENY NAT. BANK OF PITTSBURGH *v.* HAYS.

(*Circuit Court, W. D. Pennsylvania.* July 15, 1882.)

1. WILL—LEGACIES—CHARGE ON REALTY.

Where the share in real estate devised to defendant was expressly subjected by the will to the payment of capital in a firm, the administrator *cum testamento annexo* is entitled to the fund arising from the sale of such share.

2. SAME—RESIDUARY CLAUSE.

Where a testator, without creating an express trust to pay legacies, makes a general residuary disposition of his whole estate, blending the realty and personalty in one fund, the real estate is constructively charged with the legacies.

3. SAME—RIGHTS OF LEGATEES.

Where the real estate of decedent, charged with payment of the legacies, had been partitioned among the devisees, the legatees not being parties to the partition, and never acceding to any apportionment of the legacies, they are not estopped from asserting their paramount lien against a fund arising from a judicial sale of a portion of the realty.

*Sur* exceptions to auditor's report distributing the proceeds of execution.

*Geo. Shiras, Jr.*, for exceptants.

*John Dalzell* and *S. A. McClung*, for report.

ACHESON, D. J. The fund for distribution arises from the sale of real estate sold by the marshal as the property of William B. Hays, Jr., under a *lev. fa.* upon a judgment *sur* mortgage given by the defendant to the plaintiff. The property is part of the residuary estate devised by the will of William B. Hays, Sr., deceased, to his five children, of whom the defendant is one. Curtis, another son and devisee, conveyed his share to the defendant, and the parties subse-

quently caused partition to be made among themselves. The property sold consists of the two shares assigned to the defendant—one in his own right as devisee, and the other in his right as alienee of Curtis.

It is claimed, on the one hand, that the fund should be applied to the plaintiff's mortgage, and to a purchase-money mortgage which the defendant gave Curtis, and which, by assignment, came to one McIntyre; and on the other hand the fund is claimed by the administrator d. b. e. cum testamento annexo of William B. Hays, Sr., and legatees under the will. The auditor, who sustained the latter claims, seems to have given the case a very careful consideration. I approve his findings of fact, and am of opinion that his distribution proceeds on sound legal principles.

1. In treating the amount of the testator's capital in the firm of William B. Hays & Co. as a lien upon the share of the real estate devised to the defendant, and as discharged by the marshal's sale, the auditor was clearly right. *Hanna's Appeal,* 31 Pa. St. 53. The share devised to the defendant was expressly subjected by the will to the payment of that capital, and the auditor properly sustained the claim of the administrator *cum testamento annexo* to the fund realized by the sale of that share.

2. The legacies under the will of William B. Hays, Sr., undoubtedly come within the well-settled rule that where a testator, without creating an express trust to pay legacies, makes a general residuary disposition of his whole estate, blending the realty and personalty together in one fund, the real estate is constructively charged with the legacies. Hill, Trustees, 860; *Lewis v. Darling,* 16 How. 1. This principle was adopted as a rule of property in Pennsylvania at a very early day, (*Nichols v. Postlethwaite,* 2 Dall. 131,) and has constantly prevailed, as is shown by the cases cited in the auditor's report. The fact that the testator expressly charged the amount of his capital in the firm of William B. Hays & Co. upon the share of the realty devised to the defendant, does not interfere with the implication arising from blending the real and personal estates in the residuary clause, or indicate any intention not to charge the legacies upon the real estate. *McLanahan v. Wyant,* 1 Pen. & W. 112.

3. But the auditor having found that the personal estate which came into the hands of the executor was sufficient to pay all the debts and expenses of administration and the legacies, it is insisted that he erred in holding that the lien of the legacies upon the real estate nevertheless continued. To sustain the contrary doctrine the except-

ants rely upon *Hanna's Appeal, supra,* and *Kohler's Appeal,* 3 Grant, 143. In those cases it is indeed said that "when assets are received by the executor sufficient to cover the expenses of administration, satisfy debts, and pay legacies, the real estate is discharged from further liability," and "if the assets are wasted or misapplied, the loss falls on the legatees;" that "the real estate charged is liable on a deficiency of assets, but not for the misapplication, waste, or insolvency of the executor." There, however, the court undoubtedly spoke in respect to a case where the personal estate is the primary fund to pay legacies, and the charge upon the real estate is merely subsidiary. But we have no such distinction here. The personal estate is not the primary fund under this will. The testator, by blending the personalty and realty created a single fund charged with the payment of the legacies.

Hence, it was held in *Lewis* v. *Darling, supra,* that where a will, by its residuary blended the disposition of the realty and personalty, shows an intention to charge the real estate with the payment of a legacy,—it is not necessary to aver a deficiency of personal assets in a bill to enforce a lien against the real estate. The *Bank* v. *Donaldson,* 7 Watts & S. 410, distinctly decides that where the real and personal estates are thus blended together, though the testator may have left ample personalty to pay debts and legacies, yet, if not applied to the legacies, they remain a charge upon the real estate, and are entitled to payment out of the proceeds when sold on an execution against the residuary devisee. And to the like effect is *Gallagher's Appeal,* 48 Pa. St. 121.

I fail to see in the case any element of estoppel against the legatees. None of them were parties to any *devastavit* of the personal assets, nor did they do aught to mislead the exceptants. The rights of the latter certainly can rise no higher than the rights of Curtis H. Hays. Now, if the executors of William B. Hays (of whom the defendant was one) were trustees for the legatees, they were equally so for Curtis, who could have taken steps to secure the payment of the legacies in relief of the share devised to him. As the residuary devisees could take nothing except what might remain after payment of the legacies, the legatees could safely repose upon the ample security of the real estate. It may be added that most of the legatees were, and still are, minors.

4. The exceptants, however, contend that in no view of the case should the fund be charged with more than two-fifths of the legacies, the other shares of the testator's residuary estate being answer-

able for their proportions of this common burden. But the legatees were not parties to the partition of the real estate, and never acceded to any apportionment of the legacies. Without their consent part of the real estate, which is their security, has been converted into money by a judicial sale, and thereby their lien, which is paramount, has been transferred to the fund. Their legal right to the fund is complete, and neither the exceptants nor those under whom they claim have superior equities. *Neff's Appeal,* 9 Watts & S. 36; *Arna's Appeal,* 65 Pa. St. 72. To the payment of the legacies the fund must therefore go, and the exceptants must seek subrogation and indemnity in a different proceeding. Id. The other devisees are not before the court. We are not advised as to their equities, and cannot act in respect to them.

And now, July 15, 1882, the exceptions to the report of the auditor are overruled, and the distribution made by him is confirmed absolutely.